IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| CHRISTY S. LOVE, | ) |
| | ) Case No. 2:07-CV-00593 BSJ |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| vs. | ) **& ORDER** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) **FILED** |
| Defendant. | ) CLERK, U.S. DISTRICT COURT |
| | ) January 14, 2009 (1:34pm) |
| | ) DISTRICT OF UTAH |

* * * * * * * * *

Plaintiff Christy S. Love ("Love") filed this action seeking judicial review of a final decision of defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"), denying Love's applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383c. This matter is currently before the court on Love's Motion to Reverse or Modify Administrative Decision (dkt. no. 12) (Love's "Motion"). The court heard oral argument on Love's Motion on March 20, 2008. Michael E. Bulson appeared on behalf of Love, and Amy J. Oliver appeared on behalf of the Commissioner. The court has carefully considered the parties' briefs and arguments, as well as the law and facts relevant to Love's Motion. Now being fully advised, the court enters the following Memorandum Opinion & Order, vacating the ALJ's decision and remanding this matter to the Commissioner for further proceedings in accordance with this opinion and order.

**I.    BACKGROUND**

Love was born on April 1, 1959.  She earned a high school diploma and attended college for one year.  Love last worked in April of 2002, as a merchandiser for Intermountain Greeting Cards, where she worked two or three days a week for a total of six to nine hours a week.  Love's other past relevant work includes work as an office manager, a customer service manager, and a cashier checker.

On June 24, 2004, Love applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, claiming that she had been disabled since June 1, 1995.  Love alleged that fibromyalgia, chronic fatigue syndrome, nerve damage, hip problems, irritable bowel syndrome, chronic muscle spasms, spinal arthritis, and sciatica limited her ability to work.  Love's applications were denied initially and upon reconsideration.  Thereafter, Love requested a hearing before an Administrative Law Judge (the "ALJ"), which was held on October 11, 2006.  At the hearing, Love amended her alleged onset of disability date to March 1, 2002, and argued that her residual functional capacity is such that she is unable to perform any work.

On October 27, 2006, the ALJ issued a written decision determining that Love was not disabled within the meaning of the Social Security Act and denying Love's applications for benefits.  The ALJ denied Love's disability claim at step four of the five-step sequential evaluation process used to determine whether an individual is disabled.[1]  While the ALJ

---

[1] In determining whether a claimant is disabled, the Commissioner considers, in sequence, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a medically severe impairment or combination of impairments; (3) has an impairment that is equivalent to one of a number of impairments listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is able to perform his or her past relevant work; and if not, (5) whether he or she is able to perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1998).

determined at step two that Love's fibromyalgia, chronic fatigue syndrome, back disorder, bursitis of the hip, irritable bowel syndrome, and depression constituted severe impairments, he determined at step four that Love's residual functional capacity enabled her to perform her past relevant work as an office manager, a customer service manager and a cashier, and that she was therefore not disabled.[2]  Specifically, the ALJ determined that

> [Love] has the residual functional capacity to perform light work activity
> with the following limitations.  She is able to lift/carry 20 pounds occasionally
> and 10 pounds frequently.  During an 8-hour workday, she can sit 3-4 hours at
> a time up to 7-8 hours and stand 1-2 hours at a time up to 6 hours.  She can
> occasionally, up to 1/3 of the time, walk, climb stairs, squat, bend/stoop, kneel,
> reach above her shoulders, use foot controls and drive.  She can frequently, up to
> 2/3 of the time, push/pull, turn arms and wrists, open and close fists, and use
> her hands and fingers.  She can continuously, up to 3/3 of the time, balance.
> She has normal grip strength in her left and right hands and has fine and manual
> dexterity in both hands.  She has mild limitations in her ability to concentrate; to
> perform duties within a schedule; and to deal with stress.  Her vision and hearing
> are normal.  She is able to tolerate air pollutants and cold/hot settings.

(Admin. R. at 52.)  According to the ALJ, Love's past relevant work as an office manager, a customer service manager, and a cashier would not require Love to perform activities precluded by her residual functional capacity.

In his decision, under the heading "Medical Evidence Related to Functioning," the ALJ summarized portions of the medical evidence in Love's record.

Under the separate heading "Medical Opinions," the ALJ briefly discussed the opinions of two non-examining State agency medical consultants.  In November of 2004, nearly two years before Love's hearing in front of the ALJ, a non-examining State agency medical consultant completed a checklist form, marking boxes indicating among other things that Love was able to

---

[2]At step one, the ALJ determined that Love had not engaged in substantial or gainful work activity since her amended onset of disability date of March 1, 2002.  And at step three, the ALJ concluded that Love did not have an impairment or combination of impairments that met or equaled the criteria of a listed impairment.

frequently lift and/or carry ten pounds; occasionally lift and/or carry twenty pounds; sit for about six hours in an eight-hour workday; stand and/or walk for about six hours in an eight-hour workday; and push and pull without limitation. After completing the checklist form, the non-examining consultant concluded that Love's residual functional capacity enabled her to perform the requirements of light work. In March of 2005, a second non-examining State agency medical consultant reported that there was no new medical evidence indicating that Love's condition had objectively worsened and opined that the first consultant's opinion regarding Love's functional capacity for light work was correct.

The ALJ indicated in his decision that he had "considered and weighed" these opinions of the non-examining State agency medical consultants, but he did not explain the weight he had afforded such opinions. (Admin. R. at 68.)

Also under the heading "Medical Opinions," the ALJ discussed the opinions of several medical sources who had examined Love and had concluded that Love's functional capacity and ability to work were significantly more limited than the ALJ had determined. Specifically relevant for purposes of this case are the opinions of Linda Hensely, a licensed nurse practitioner; Albert E. Chandler, a physical therapist; Scott Carpenter, a physician assistant; and Paula Siciliano, a certified nurse practitioner (collectively referred to as the "non-physician sources").

Hensley repeatedly examined and treated Love from April of 2003 through August of 2004. On August 25, 2003, Hensley indicated in a letter addressed to the Department of Workforce Services that Love was unable to work at that time due to physical limitations.

Similarly, in February of 2004, after examining Love, considering her history, and

performing certain functional activity tests, Chandler opined in a Workplace Functional Ability Medical Report for the Department of Workforce Services that Love's functional capacity limited her to working approximately two to three hours a day or ten to fifteen hours a week. In addition, Chandler opined that Love's physical limitations required that she be free to move about and change positions as needed in the workplace. Chandler further opined that prolonged work at a computer or any repetitious arm work would be aggravating to Love.

In April of 2004, Carpenter, like Chandler, completed a Workplace Functional Ability Medical Report for the Department of Workforce Services. After examining Love, considering her history, and evaluating her performance in certain "laboratory and/or other specialized tests," Carpenter determined that Love could sit for about fifteen minutes at a time for a total of one to two hours a day. Carpenter also determined that Love could stand for about five to ten minutes at a time for a total of one to two hours per day. After considering Love's functional limitations, Carpenter concluded that Love was unable to work.

Finally, in September of 2006, Siciliano, who had examined Love ten times between October of 2005 and September of 2006, completed a medical report in connection with Love's application for supplemental security income and medicaid benefits. In her report, Siciliano opined that Love was only capable of working a total of two to three hours a day due to her need to frequently move, change positions, and lie down. Like Carpenter, Siciliano opined that during an eight-hour workday, Love could sit for about ten to fifteen minutes at a time for a total of two hours and could stand and walk for about five to ten minutes at a time for a total of eighty minutes. Siciliano determined that Love could not lift or carry any amount of weight and could not bend, squat, or reach. Siciliano also determined that during an eight-hour workday, Love

would need unscheduled breaks every five to ten minutes.  Siciliano opined that on average, Love was likely to be absent from work more than four days per month because of her impairment and/or treatment.  Like Hensley and Carpenter, Siciliano concluded that Love was not physically able to work on a regular and continuous basis.

After describing these opinions of the non-physician sources, the ALJ indicated that he had afforded such opinions "little weight."

After the ALJ issued his decision determining that Love was capable of performing her past relevant work and was therefore not disabled, Love requested that the Appeals Council review the ALJ's decision.  On June 12, 2007, the Appeals Council denied Love's request.  Accordingly, the ALJ's decision became the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 416.1481.

Love then filed this action seeking review of the Commissioner's decision.  Love argues that the ALJ failed to properly apply Social Security Ruling 06-03p in evaluating the opinions of the non-physician sources.[3]  According to Love, had the ALJ properly analyzed the non-physician sources' opinions under SSR 06-03p, he would have afforded such opinions more than

---

[3]The Social Security regulations distinguish between "acceptable medical sources," such as licensed physicians and psychologists, and "other sources" that are not considered "acceptable medical sources," such as nurse practitioners, physician assistants, and therapists.  20 C.F.R. §§ 404.1513, 416.913; SSR 06-03p, 2006 WL 2329939, **1-2 (S.S.A. Aug. 9, 2006).  While information from "other sources" cannot establish the existence of a medically determinable impairment, it may provide insight into key issues such as impairment severity and functional effects and must be considered by an ALJ in making a disability determination.  SSR 06-03p, 2006 WL 2329939, at **1-3.

SSR 06-03p clarifies how an ALJ should consider and weigh opinions from "other sources."  *Id.* at *1.  SSR 06-03p provides that the factors for weighing the opinions of "acceptable medical sources" included in 20 C.F.R. §§ 404.1527(d) and 416.927(d) represent basic principles that apply to the consideration of the opinions from "other" medical sources.  *Id.* at *4.  These factors include how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.  *Id.* at **4-5.

"little weight" and would have concluded that Love's functional limitations precluded her from performing her past relevant work. Love also contends that the ALJ's determination regarding Love's residual functional capacity is not supported by substantial evidence in the record. During oral argument on Love's motion, counsel for Love asked the court to remand this matter in order to allow the ALJ to re-evaluate the opinions of the non-physician sources pursuant to the factors set forth in SSR 06-03p and to provide a more specific explanation of his analysis of such factors in determining the weight to be afforded such opinions.

The Commissioner responds that the ALJ thoroughly discussed the non-physician sources' opinions, cited SSR 06-03p, and provided a detailed explanation of why he weighed such opinions the way that he did. According to the Commissioner, the ALJ's assessment of the opinions of the non-physician sources comported with the requirements of SSR 06-03p. The Commissioner also argues that there is sufficient evidence in the record to support the ALJ's decision at step four that Love was not disabled.

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision, the court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Instead, the court reviews the Commissioner's decision "'to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" *Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hamlin*, 365 F.3d at 1214 (quoting *Doyal*, 331 F.3d at 760).

**III.     DISCUSSION**

Remand is appropriate in this case because the court, having carefully reviewed the ALJ's written decision, is unable to determine whether substantial evidence supports the ALJ's conclusions at step four of the evaluation process.  It is simply not clear from the ALJ's decision what specific medical opinions or evidence he relied on as support for his determinations regarding Love's residual functional capacity and ability to perform her past relevant work.

In his decision, the ALJ explained that he had afforded "little weight" to the opinions of the non-physician sources.  In other words, the ALJ made clear that he had not relied significantly on, or given substantial weight to, the opinions of the non-physician sources that Love was either unable to work (Hensley, Carpenter, and Siciliano) or was substantially limited in her ability to work (Chandler).[4]  But what is not clear from the ALJ's opinion is what medical evidence or opinions *he did* rely on in reaching his conclusions regarding Love's ability to work.

Although the ALJ provided a detailed summary of portions of Love's medical records in his decision, the summary does not help the court follow the ALJ's reasoning at step four of the evaluation process.  The ALJ's summary merely restates or describes certain medical evidence in the record.  While some of the evidence summarized by the ALJ seems to support the ALJ's determination that Love's impairments were not of disabling severity, other evidence included in the summary seems to support Love's disability claim.  The summary does not provide any

---

[4]The court is unable to determine from the ALJ's decision whether the ALJ afforded some weight to, or completely rejected, the opinions of the non-physician sources.  Unlike the ALJ's indication that he had afforded the opinion of Dr. Peggy Fujimura "no weight," (Admin. R. at 64), the ALJ did not expressly reject the non-physician sources' opinions.  Instead, the ALJ indicated that he had afforded such opinions "little" – in other words, some – weight.  The ALJ's conclusions regarding Love's residual functional capacity and ability to work, however, are in conflict with the opinions of the non-physician sources.  If in forming his conclusions, the ALJ did in fact rely in some way on the non-physician sources' opinions or on certain evidence produced by the non-physician sources, the extent to which he did so is not clear from the ALJ's decision.

information regarding how the ALJ analyzed or weighed the summarized evidence. Nor does the summary explain what particular evidence the ALJ relied on as support for his determination regarding Love's residual functional capacity and ability to perform her past relevant work.

Similarly, the ALJ's discussion of the opinions of the non-examining State agency medical consultants is not helpful to the court in determining whether substantial evidence supports his conclusions at step four. Although the ALJ indicated that he had "weighed and considered" the opinions of the two non-examining consultants, he committed legal error by failing to explain the specific weight, if any, he afforded such opinions. *See* 20 C.F.R. § 404.1527(f)(2)(ii) (explaining that unless the treating source's opinion is given controlling weight, an administrative law judge must explain the weight given to the opinions of a State agency medical consultant in his decision); 20 C.F.R. § 416.927(f)(2)(ii) (same); *Hamlin*, 365 F.3d at 1223 ("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."); SSR 96-6p, 1996 WL 374180, * 2 (S.S.A. July 2, 1996) ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they . . . must explain the weight given to the opinions in their decisions."). The similarities between the ALJ's and the non-examining consultants' opinions regarding Love's residual functional capacity suggest to the court that the ALJ relied considerably, if not exclusively, on the non-examining consultants' opinions in reaching his decision regarding Love's capacity to work. For instance, like the non-examining consultants, the ALJ concluded that Love was capable of performing light work activity. Moreover, consistent with the boxes checked on the first non-examining consultant's assessment form, the ALJ determined that Love had the physical capacity to frequently lift

and/or carry ten pounds; occasionally lift and/or carry twenty pounds; stand for six hours in an eight-hour workday; sit for six hours (or more) in an eight-hour workday, and frequently push and pull.[5]  In the absence of a specific explanation from the ALJ regarding what weight he afforded the consultants' opinions, however, the court will not presume that the ALJ relied entirely or in part on such opinions as support for his determinations at step four.

As written, the ALJ's decision does not make clear how the ALJ reached his conclusions regarding Love's residual functional capacity and ability to work.  And since it is the ALJ's responsibility to sufficiently explain the bases of his decision, the Commissioner's own post hoc explanations in this case as to what evidence in the record substantially supports the ALJ's decision is unavailing.  *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) ("The Commissioner's post hoc argument supplying possible reasons for the ALJ's seeming rejection of Ms. Youngs' opinions is unavailing."); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (indicating that affirming the district court's "post hoc effort to salvage the ALJ's decision would require [the court of appeals] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process").  Because the court cannot properly evaluate whether substantial evidence supports the ALJ's determination at step four that Love is not disabled, the court vacates the ALJ's decision and remands this case to the Commissioner for further proceedings consistent with this opinion and order.

On remand, the ALJ must explain in sufficient detail the medical evidence and opinions

---

[5] The court has reviewed the record and is unaware of any other medical evidence or opinion in the record, besides the checklist form completed by the first non-examining consultant, that includes these specific findings regarding Love's ability to perform these specific activities.  To the extent that there is such evidence in the record, the ALJ did not specify that he had relied on that evidence in reaching his conclusions regarding Love's residual functional capacity.

supporting his determinations regarding Love's residual functional capacity and clearly set out his reasons for accepting or rejecting evidence at step four. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). On remand, the ALJ must also explain the specific weight afforded to the opinions of the non-examining State agency medical consultants, if any. In determining how to weigh such opinions, the ALJ should consider that "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180, at *2 (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). "[T]he opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." SSR 96-6p, 1996 WL 374180, at *2.

> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

*Id.* The ALJ must apply these rigorous standards in determining the appropriate weight to be

afforded the opinions of the non-examining State agency medical consultants on remand.[6] The ALJ must also consider the Tenth Circuit's holding in *Frey v. Bowen*, that boxes checked on an evaluation form by a nontreating physician, "standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." 816 F.2d 508, 515 (10th Cir. 1987); *see id.* (indicating that "findings of a nontreating physician based upon limited contact and examination are of suspect reliability").

Finally, the court agrees with Love's contention that the ALJ has not clearly applied SSR 06-03p in determining what weight to afford the opinions of the non-physician sources and that he must therefore do so on remand. Under SSR 06-03p, the ALJ should have considered the following factors in evaluating the non-physician sources' opinions: how long the source had known and how frequently the source had seen the individual; how consistent the source's opinion was with the other evidence in the record; the degree to which the source presents relevant evidence to support his or her opinion; how well the source explained his or her opinion; the source's speciality or area of expertise, if any; and any other factors that supported or refuted the source's opinion. SSR 06-03p, 2006 WL 2329939, at **4-5. While not every one of these factors will apply in every case,

---

[6]The ALJ's decision makes clear that the ALJ failed to apply these standards in analyzing the opinions of the non-examining consultants in the first instance. The ALJ's analysis of the non-examining consultants' opinions was explained in only one paragraph of his twenty-three-page decision. In that paragraph, the ALJ described the non-examining consultants' summary of Love's activities of daily living and generally asserted that "[a]lthough the State agency physicians did not examine the claimant, they provided specific reasons for their opinions about the claimant's residual functional capacity showing that the opinions were grounded in the evidence in the case." (Admin. R. at 68.) But the ALJ failed to highlight any specific portion of the record that either supported or was consistent with the non-examining consultants' opinions. Similarly, the ALJ did not discuss the thoroughness or persuasiveness of the non-examining consultants' explanations for their opinions. Nor did the ALJ discuss whether at the time of Love's hearing in October of 2006, there was any relevant evidence before him that was not considered at the time the non-examining consultants formed their opinions in November of 2004 and in March of 2005. In sum, the ALJ's decision does not make clear that he subjected the non-examining consultants' opinions to the "rigorous" analysis that is required "as the ties between the source of the opinion and the [claimant] become weaker." SSR 96-6p, 1996 WL 374180, at *2.

>the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at \*6.

In discussing the opinions of the non-physician sources, the ALJ cited to SSR 06-03p and set forth various reasons as to why he afforded each of their opinions "little weight." But absent from the ALJ's discussion is any explanation regarding whether he considered a number of the factors set forth in SSR 06-03p in determining what weight to afford such opinions. For instance, there is no express indication in the ALJ's decision that he considered whether, or to what extent, the non-physician sources' opinions were consistent with or supported by other evidence in record. Also missing from the ALJ's discussion is an explanation of whether, or to what extent, Hensley's and Siciliano's treatment relationship with Love factored into the ALJ's weighing of their opinions. These are just a couple of examples of how despite repeatedly citing SSR 06-03p in his decision, the ALJ's discussion does not make clear to the court that he genuinely considered the factors described in SSR 06-03p in determining what weight to afford the opinions of the non-physician sources. The court will not presume that the ALJ properly evaluated the opinions of the non-physician sources under SSR 06-03p simply because the ALJ cited to that ruling in his decision.

After examining Love, the four non-physician sources each concluded that Love was either not able to work or was substantially limited in her capacity to work. Had the ALJ given more weight to one or more of these opinions, his conclusions at step four would likely have been different. Under these circumstances – and particularly in light of the ALJ's failure to describe with sufficient clarity the bases for his conclusions at step four – the court determines

that on remand, the ALJ should reconsider the opinions of the non-physician sources pursuant to the factors described in SSR 06-03p and ensure that his decision explicitly describes his consideration of such factors.  The court expresses no opinion as to the weight that should be afforded such opinions, as that is an issue for the Commissioner to determine.

On remand, the ALJ is free to modify his findings at step four of the evaluation process, if appropriate.

For the reasons stated above, Love's Motion (dkt. no. 12) is GRANTED to the extent that the court vacates the Commissioner's decision and remands this matter to the Commissioner for further proceedings consistent with this opinion and order.

**SO ORDERED.**

DATED this ____ day of January, 2009.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

that on remand, the ALJ should reconsider the opinions of the non-physician sources pursuant to the factors described in SSR 06-03p and ensure that his decision explicitly describes his consideration of such factors. The court expresses no opinion as to the weight that should be afforded such opinions, as that is an issue for the Commissioner to determine.

On remand, the ALJ is free to modify his findings at step four of the evaluation process, if appropriate.

For the reasons stated above, Love's Motion (dkt. no. 12) is GRANTED to the extent that the court vacates the Commissioner's decision and remands this matter to the Commissioner for further proceedings consistent with this opinion and order.

**SO ORDERED.**

DATED this _14_ day of January, 2009.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge